UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BARBARA ROSINSKI,

                                  Plaintiff,

               -vs-                                  06-CV-733C(SR)

AMERICAN AXLE & MFG., INC.,
TONAWANDA FORGE DIVISION,

                                  Defendant.

---

APPEARANCES:    LINDY KORN, ESQ., Buffalo, New York, for Plaintiff.

                          GIBSON, McASKILL & CROSBY, LLP (ELIZABETH BERGEN, ESQ., of Counsel), Buffalo, New York, for Defendant.

## INTRODUCTION

In this employment discrimination case brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111, *et seq.* ("ADA"), plaintiff seeks damages for the defendant's alleged failure to promote her and provide her educational and training opportunities based on her gender. She also alleges that she was forced to endure a gender-based hostile work environment, suffered gender-based retaliation for her complaints, and was discharged from her position based on gender and disability in violation of the ADA. Plaintiff has withdrawn her claims pursuant to the New York State Human Rights Law. Defendant has filed a motion for summary judgment dismissing the complaint in its entirety (Item 17). Plaintiff filed a response in opposition to the motion

(Item 21), and defendant filed a reply (Items 25, 26). Oral argument was heard on August 12, 2009. For the reasons that follow, the defendant's motion is granted.

## FACTS

In support of the motion, defendant submitted plaintiff's deposition. In it, plaintiff testified that she commenced her employment with General Motors ("GM") in 1976 as a college graduate in training. Item 18, Exh. D ("Rosinski Dep."), p. 18. In 1980, she became a purchaser. *Id.*, p. 21. In 1990, plaintiff was promoted to the position of Production Planner/Scheduler at GM's Tonawanda Forge plant. *Id,* pp. 23, 33. During that time, GM paid for plaintiff to attend night classes at the University of Buffalo toward a Bachelor of Science degree. *Id.,* 21-22.

In 1994, GM sold its Tonawanda Forge Division to American Axle. Rosinski Dep., p. 26. Plaintiff remained a scheduler for American Axle with the same seniority rights. *Id.,* p. 30. Her manager was Dan McNaughton, who had supervised her at GM. *Id.,* pp. 35-36. McNaughton was replaced by Robert Boeing in 1996. *Id.,* p. 36. At that time, plaintiff complained to Boeing about the daily production meetings which were "getting out of hand." *Id.,* p. 40. She was the only woman, and the other attendees often made inappropriate comments. *Id.,* pp. 48-49. On one occasion, a man unzipped his pants and took out a banana. *Id.,* p. 42. Another man told her if she had a pickle to take out the garbage, she would not need to get married. *Id.,* p. 43. The atmosphere at the meetings got worse after she complained to Boeing. *Id.,* p. 46. Boeing advised the plant manager about the situation. *Id.,* p. 50. For a brief time period, the plant manager attended the meetings. *Id.,* p. 51. Action was taken against the offending employees, but plaintiff felt

that her complaints led to her eventual dismissal. *Id.,* pp. 44, 50. Plaintiff also stated that she had earlier complained to McNaughton about the meetings. *Id.,* p. 43.

Plaintiff stated that she was passed over for a promotion in 2001. She sought the position of material supplier scheduling/buyer, which was filled by James DeGuehery. Plaintiff stated that DeGuehery had supervisory experience, and she did not. Rosinski Dep., pp. 56-58.

Plaintiff testified that she was part of a team that worked to implement the "Oracle" computer system from 1997 until 2000. After the successful implementation, the Information Technology ("IT") manager brought the team together for a celebration luncheon. Plaintiff was not invited to the celebration, and her congratulatory plaque was given to her after the fact and was not personalized, as all the others were. Rosinski Dep., p. 60. Plaintiff did, however, receive a $1000 cash award for her work on the team. *Id.,* p. 61. She was the only team member to receive a cash award. *Id.*

In early 2002, plaintiff sought permission to work a four-day week so that she could travel to New York City and attend a Masters degree program at St. John's University. The program was not offered by American Axle, but another organization unaffiliated with American Axle. Plaintiff was told that American Axle could not guarantee her position if she left her job to attend the course of study. Rosinski Dep., pp 65-66.

From April to December 2002, plaintiff took a medical leave for treatment of ovarian cancer. She returned to her job and was promoted in January 2004 to the position of Coordinator of Scheduling. Rosinski Dep., p. 79. Following her medical leave, plaintiff sought no accommodation and was never questioned regarding her ability to work. *Id.,* pp. 87-88.

On September 30, 2004, plaintiff was advised that she would be laid off. Rosinski Dep., p. 91. She declined a severance package that was offered. *Id.,* p. 97. Plaintiff stated that American Axle had a policy that prohibited the layoff of employees within two years of retirement, and plaintiff was approximately six months away from being protected from termination. *Id.,* p. 103.

Defendant also submitted the deposition of Robert Boeing, who testified that while he was her supervisor, plaintiff asked for more responsibilities. Item 18, Exh. E ("Boeing Dep."), p. 22. Plaintiff also complained to him when she was not invited to the Oracle celebration lunch. Boeing spoke with either the plant manager or the IT manager and determined that it was merely an oversight. *Id.,* pp. 24, 46. Boeing said that plaintiff was a good employee with no performance problems. *Id.,* p. 36.

In support of the motion, defendant submitted the deposition of Linda Seay, the personnel director at American Axle from 2003 until 2006. Item 18, Exh. F ("Seay Dep."), p. 7. Ms. Seay stated that GM had a program whereby employees close to retirement would be given credit for service and age so that they could retire early. American Axle did not have the same program. *Id.,* pp. 33-34. Ms. Seay notified plaintiff of her layoff in 2004. *Id.,* p. 38. At the time, management asked all departments to determine whether jobs could be combined or eliminated. *Id.,* pp. 39, 59. Plaintiff's position was combined with another, and the job was given to the other employee, also a female, who "had a different skill set." *Id.,* p. 40. Plaintiff complained to Ms. Seay that she was being laid off because she "spoke up." *Id.,* p. 44. Ms. Seay stated that there was no freeze on promotions at the time plaintiff was promoted in January 2004. Seay Dep., pp. 47-48.

In opposition to the motion (Item 21), plaintiff submitted her letter request for an educational leave in 2001 (Exh. C), a letter to Richard Dauch, CEO of American Axle, following her layoff (Exh. D), and a reply from Robert Mathis, Director of Human Resources at American Axle, dated October 1, 2004 (Exh. E). Mr. Mathis explained that business conditions at the Tonawanda Forge facility had "deteriorated significantly" and the entire facility was "required to re-examine its departmental organizations and prioritize the job positions." Layoff decisions were made after "thorough reviews of every position within each department, focusing on skills, abilities and positions within each group." Mr. Mathis advised plaintiff that he was unable to change her layoff status and encouraged her "to consider taking advantage of the outplacement and layoff severance program offered . . . ." *Id.*

## DISCUSSION

Defendant has moved for summary judgment dismissing the complaint in its entirety. Plaintiff argues that she has raised triable issues of material fact, and that summary judgment is inappropriate.

**1. Summary Judgment Standards**

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Although courts should be cautious about granting summary judgment in cases where motive, intent, or state of mind are at issue, a common component of

5

discrimination actions, *see Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir. 1989); *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir. 1988), "the salutary purposes of summary judgment–avoiding protracted, expensive and harassing trials–apply no less to discrimination cases than to . . . other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829 (1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993) (trial courts should not "'treat discrimination differently from other ultimate questions of fact'")).

In order to defeat a summary judgment motion properly supported by evidence in admissible form, the non-movant must offer comparable evidence demonstrating the existence of a genuine issue of material fact. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "'scintilla of evidence,'" *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990), *cert. denied,* 500 U.S. 928 (1991) (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir. 1993), and cannot rely on the allegations in his or her pleadings, conclusory statements, or "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge from a competent source, and "set forth such facts as would be admissible in

evidence . . . ." *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir. 2004). The requirement in Rule 56(e) that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that hearsay assertions that would not be admissible at trial if testified to by the affiant are insufficient to create a genuine issue for trial. *Patterson v. County of Oneida,* 375 F.3d at 219.

### 2. Gender Discrimination under Title VII

In analyzing plaintiff's claims of gender discrimination under Title VII, the court reviews the record under the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). The first step in the *McDonnell Douglas* analysis requires a plaintiff to prove, by a preponderance of the evidence, a *prima facie* case of discrimination or unlawful retaliation by the employer. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 446-47 (2d Cir. 1999), *cert. denied,* 530 U.S. 1242 (2000). If plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* at 446. In the third step of the *McDonnell Douglas* analysis, the burden then shifts back to plaintiff to demonstrate that the proffered reason was not the true reason for the employment decision, and that discrimination was the true reason. *Id.*

Defendant contends that plaintiff has failed to establish a *prima facie* case of gender discrimination. It further argues that even if the court determines that she has successfully set forth a *prima facie* case, summary judgment is nonetheless appropriate, as the defendant's actions were justified by legitimate, nondiscriminatory reasons. To establish a *prima facie* case of gender-based disparate treatment, plaintiff must show that: (1) she

belongs to a protected class; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred in circumstances giving rise to an inference of discrimination on the basis of her membership in that class. *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004). There is no question that plaintiff belongs to a protected class and was performing her duties in a satisfactory manner. Plaintiff states that she was passed over for a promotion and was laid off, and the court finds that she suffered adverse employment actions for purposes of Title VII.[1]

To establish the fourth element of the *prima facie* case, plaintiff must show that any adverse employment action occurred under circumstances giving rise to an inference of discrimination. She may do so by "showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside [the] protected group.'" *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (citation omitted). To raise an inference of discrimination, plaintiff must "'show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" *Id.* (citation omitted).

"Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury." *Mandell v. County of Suffolk,* 316 F.3d at 379. "This rule is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 n. 2 (2d Cir. 2001). To prevail, the plaintiff

---

[1] While plaintiff has also offered proof that she sought and was denied an educational leave of absence, to the extent that this could be considered an adverse employment action, she has offered no proof that this denial occurred under circumstances giving rise to an inference of discrimination.

must at least "provide 'an objectively identifiable basis for comparability' between herself and other employees." *Goldman v. Admin. for Children's Serv.*, 2007 WL 1552397, at *7 (S.D.N.Y. May 29, 2007) (citation omitted). Conclusory statements that "similarly situated" employees outside the protected class were treated more favorably are not sufficient to defeat summary judgment. *Id.,* at *7-8; *see also Chan v. NYU Downtown Hosp*., 2006 WL 345853, at *5-6 (S.D.N.Y. February 14, 2006) (plaintiff's conclusory statements that Caucasian employees were treated differently were insufficient to make out *prima facie* case of race discrimination because plaintiff did not "identify any similarly situated individuals outside her protected class who were treated preferentially"); *Abato v. New York City Off-Track Betting Corp.*, 2007 WL 1659197, at *6 (S.D.N.Y. June 7, 2007) (conclusory statements that "similarly situated younger women" were treated differently, in the absence of any "specific information" concerning those individuals, were "insufficient to present a genuine issue of material fact").

While plaintiff alleges in her complaint and argues in her memorandum of law that she was passed over for numerous promotions, plaintiff raised only one incident in her deposition in which she was denied a promotion that was given to a male applicant. The successful applicant in that case had supervisory experience, and plaintiff admitted that she had none. Proof of any other allegations that plaintiff was passed over for promotion, as argued in her complaint and memorandum of law, and as stated at oral argument, have not been presented to the court in admissible form. Plaintiff has thus failed to show that she was similarly situated in all material respects to the male candidate who was given the promotion in 2001, or that defendant failed to promote her under circumstances that give rise to an inference of discrimination.

Additionally, the record indicates that plaintiff was promoted In January of 2004, and her layoff in September 2004 was the result of a company-wide downsizing effort. Following her layoff, plaintiff's job duties were assumed by another woman who had been working at both American Axle facilities, Tonawanda Forge and Delevan Avenue. Given the fact that plaintiff was promoted just months before her layoff and that her position was combined with another and filled by a female employee, plaintiff has failed to show that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Additionally, she has offered no admissible proof to show that she was treated differently from male employees during the reduction in force.

Even if the court were to assume that plaintiff has established a *prima facie* case of gender discrimination, defendant has set forth legitimate nondiscriminatory reasons for the failure to promote in 2001 and the layoff in 2004 and plaintiff has offered no admissible proof that these reasons are pretextual. There is no admissible proof in the record indicating that plaintiff was promoted so as to make her a target for layoff, that she was laid off because of her willingness to "speak up," or that male employees were allowed to remain on the job until they could collect their pensions. Such conclusory statements are insufficient to withstand a motion for summary judgment. Plaintiff has failed to raise a genuine issue of material fact, and her Title VII claim for gender discrimination is dismissed.

**3. Retaliation**

Title VII "forbids an employer to retaliate against an employee for, *inter alia*, complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester*

*County Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006). Claims of retaliation pursuant to Title VII are subject to the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). On a motion for summary judgment, a plaintiff must first establish a *prima facie* case of retaliation by showing: (1) her participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir. 2000). Once she has done so, the burden shifts to the defendant to establish a legitimate, non-retaliatory basis for the complained-of action. If the defendant does so, the burden returns to plaintiff, who must show that the legitimate, non-retaliatory reason articulated by the defendant is a mere "pretext," and that retaliation was more likely than not the reason for the complained-of action. *See Schnabel v. Abramson,* 232 F.3d 83, 90 (2d Cir. 2000); *Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir. 1998).

The record indicates that plaintiff complained to her supervisors, Dan McNaughton and Robert Boeing, about the behavior and comments at the daily production meetings. Making a complaint regarding harassment to one's supervisor is "protected activity" under Title VII. *Cruz v. Coach Stores, Inc.*, 202 F.3d at 566. To be actionable, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006) (internal quotations omitted).

Here, plaintiff states that she was not invited to the luncheon celebrating the implementation of the Oracle project, was not allowed an educational leave to attend St. John's University, and was laid off because she "spoke up." Of these three allegedly retaliatory actions, only the layoff is actionable as it produced an injury or harm. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. at 67-68. The fact that plaintiff was neither invited to the luncheon nor allowed a leave of absence for educational purposes does not rise to an actionable level. Petty slights, minor annoyances, and simple lack of good manners will not deter a worker from making a charge of discrimination. *See Burlington Northern*, 548 U.S. at 68.

Plaintiff's layoff in 2004 is properly considered an adverse employment action for purposes of her retaliation claim. However, plaintiff has failed to offer proof of a causal connection between her complaints in the late 1990s and her layoff in 2004. Plaintiff has offered no direct proof of retaliatory animus, and her reliance on temporal proximity is undercut by the length of time between the protected activity and the challenged action. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (plaintiffs who resort solely to temporal proximity in proving causation must demonstrate the existence of a time frame that is "very close"); *Chang v. Safe Horizons*, 254 Fed.Appx. 838, 839 (2d Cir. 2007) (plaintiff's termination almost one year after her complaint of discrimination undermined any nexus based upon temporal proximity). Additionally, even assuming that plaintiff set forth a *prima facie* case of retaliation, defendant has offered evidence that the layoff was the result of a reduction in force and plaintiff has offered no admissible proof to suggest that this rationale was pretextual. Accordingly, the retaliation claim is dismissed.

### 4. Hostile Work Environment

Plaintiff also states that she was forced to endure a hostile work environment. In order to establish a hostile work environment in violation of Title VII, plaintiff must demonstrate that her workplace was permeated with "discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," as well as show a specific basis for imputing the conduct that created the hostile work environment to her employer. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). Where an employee is the victim of sexual harassment, including harassment in the form of a hostile work environment by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action. *Tasbas v. Nicholson*, 2009 WL 1458463, *13 (W.D.N.Y. May 26, 2009). However, "Title VII is not a 'general civility code,'" *Bickerstaff v. Vassar College,* 196 F.3d 435, 452 (2d Cir. 1999), and a few isolated incidents of "boorish or offensive use of language" are generally insufficient to establish a hostile work environment. *Benette v. Cinemark U.S.A., Inc.*, 295 F. Supp. 2d 243, 251-52 (W.D.N.Y. 2003); *see also Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 270 (2001) (conduct must be severely threatening or humiliating to rise to the level of a hostile work environment); *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir. 1992) ("incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief").

Here, plaintiff complains that inappropriate comments and gestures were made during production meetings at which she was the only woman. Plaintiff described two specific incidents, and stated in a conclusory manner that other inappropriate comments were made on an ongoing basis. While the conduct was unquestionably boorish and inappropriate, the court finds that such isolated comments do not rise to a level of sufficient severity or pervasiveness to alter the conditions of plaintiff's work environment. *See Petrosino v. Bell Atlantic,* 385 F.3d 210, 223 (2d Cir. 2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."). Additionally, plaintiff admits that action was taken against the offenders following her complaints. She complained to her supervisor, who spoke to the plant manager regarding the issue, and the plant manager took action, including attending the meetings. Accordingly, there is no basis upon which to impute the inappropriate behavior of plaintiff's co-workers to the defendant/employer, and the hostile work environment claim is dismissed.

### 5. Gender Discrimination under Title I of the ADA

Finally, defendant contends that plaintiff's cause of action under Title I of the ADA is not cognizable and must be dismissed. In reliance on *Flowers v. Southern Regional Physician Svcs., Inc.,* 247 F.3d 229 (5th Cir. 2001), plaintiff argues that she has successfully pled a cause of action for harassment based on disability and gender. Plaintiff's fourth cause of action is titled "Discrimination on the Basis of Gender in Violation of Title I." Item 1, p. 10. In support of this claim, plaintiff does not allege in her complaint

14

that she is either disabled or perceived to be disabled. On its face, the complaint fails to state a claim under Title I of the ADA.

While the *Flowers* case recognizes a cause of action for disability-based harassment under Title I of the ADA, plaintiff has neither alleged nor set forth proof of disability-based harassment. In opposition to the motion for summary judgment, plaintiff argues that she is a cancer survivor and was perceived as a disabled woman. However, plaintiff did not take time off from work after her return from medical leave, did not seek any accommodations in the workplace, and was never questioned regarding her ability to work. Following her medical leave, plaintiff was promoted. She has offered no proof that she was either disabled or perceived as disabled. Accordingly, the claim under Title I of the ADA is dismissed.

## CONCLUSION

Defendant's motion for summary judgment is granted and the complaint is dismissed. The Clerk of the Court is directed to enter judgment in favor of defendant.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: 9/29/09
p:\opinions\06-733.sep1709